# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

**Roosevelt Dabney**,

    *Plaintiff,*

v.

**Frank J. Bisignano**

    *Defendant.*

No. 4:25-cv-01331-MAL

### Memorandum & Order

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying (1) Plaintiff Roosevelt Dabney's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and (2) Dabney's application for Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq* ("SSI" benefits).  Doc. 1; Doc. 12.  The Commissioner filed a cross brief on March 12, 2025.  Doc. 15.  Dabney has not filed a reply, and the time to do so has passed.  *See* Local Rule 9.02 (requiring reply briefs in social security cases to be filed within 14 days).  Because there is substantial evidence to support the decision denying benefits, the Court affirms the Commissioner's denial of Plaintiff's applications.

### FACTS & BACKGROUND[1]

On April 7, 2023, Dabney filed for DIB and SSI alleging disability beginning on April 12, 2006, due to physical and mental impairments.  Doc. 12-1 at ¶ 1.  He alleges disability due to HIV, depression, bipolar disorder, headaches, brain injury,

---

[1] Defendant has accepted Plaintiff's Statement of Uncontroverted Material Facts (Doc. 12-1).  Doc. 15-1.

and tuberculosis. *Id.* He describes symptoms including fatigue, difficulty using his hands, frequent leg numbness, and very bad headaches triggered by walking, loud noise, and bright lights. *Id.* at ¶ 24. Dabney has previously worked as an apartment maintenance worker and railroad track repairer. *Id.* at ¶ 5. On March 4, 2024, Dabney's DIB claim was denied, but he was awarded SSI benefits with an effective onset date of April 7, 2023. Doc. 12-1 ¶ 1. This determination was upheld on reconsideration. *Id.* Dabney then requested a hearing before an administrative law Judge.[2] *Id.* The administrative law Judge denied the application for DIB benefits and, unlike the previous two adjudicators, also denied the application for SSI benefits. *Id.*

## STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for disability insurance benefits, a claimant must establish they are disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing 42 U.S.C. § 423(a)(1)(D)). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

To determine if a claimant is disabled, the Commissioner engages in a five-step process. 20 C.F.R. § 416.920. The five-step process requires the Commissioner to determine:

> 1) whether the claimant is presently engaged in a "substantial gainful activity;"

---

[2] The honorable John Price.

2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities;

3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;

4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and

5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Medhaug v. Astrue*, 578 F.3d 805, 813–14 (8th Cir. 2009) (quoting *Kelley v. Callahan*, 133 F.3d 583, 587–88 (8th Cir. 1998)).  With respect to the first step of the five-step process, "substantial gainful activity" must be both substantial and gainful.  20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities … even if it is done on a part-time basis…" *Id.*  Gainful work activity is "for pay or profit … [or] the kind of work usually done for pay or profit, whether or not the profit is realized." *Id.*

### THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ determined that Dabney met the insured status requirement of the Social Security Act through June 30, 2012.  Doc. 9-1 at 43.[3]  Under step one, the ALJ found Dabney engaged in substantial gainful activity from August 18, 2007, through December 30, 2007, and from September 16, 2022, through December 16, 2022, but otherwise did not engage in substantial gainful activity between April 12, 2006, and April 7, 2023.  *Id.* at 45.

Under step two, the ALJ found that Dabney's only severe impairment during the period in which he met the requirements for insured status (*i.e.*, through June 30, 2012) was coronary artery disease.  *Id.*  The ALJ further found that since April 7, 2023, Dabney suffered the following severe impairments: coronary artery disease; cervical degenerative disc disease; post-traumatic stress disorder; and major depressive disorder.  *Id.*

---

[3] The administrative record was filed electronically.  For ease of reference, the Court will refer to the docket page number when citing the relevant portions of that record.

3

In step three, the ALJ found that since April 12, 2006, Dabney did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. *Id.* at 48. Before reaching step four, the ALJ determined that between April 12, 2006, and June 30, 2012 (the last day Dabney possessed insured status), Dabney had the residual functional capacity to perform medium work. *Id.* at 50. He also found that since April 7, 2023 (the application date), Dabney could carry out simple tasks but should avoid interaction with the public, should have no more than occasional interaction with co-workers, and should avoid close tandem work. *Id.*

In step four, the ALJ determined that Dabney was unable to perform past relevant work. *Id* at 57. Finally, in step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Dabney can perform. *Id.* at 58. The ALJ concluded that between April 12, 2006, and the ALJ's decision on October 30, 2024, Dabney has not been under a disability within the meaning of the Social Security Act. *Id.* at 59.

### ANALYSIS

Dabney appeals alleging the ALJ (1) erred in step three (determining if any of the claimant's severe impairments—alone or in combination—meets or equals an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1), (2) erred in determining his Residual Functional Capacity (RFC), and (3) erred by failing to adequately develop the record. Doc. 12 at 4, 11–12. Residual Functional Capacity is what a claimant can do despite her limitations, determined based on "all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations." *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Dabney presents two arguments that the determination in step three was in error. Doc. 12 at 4. First, Dabney argues that the ALJ was collaterally estopped from re-adjudicating a state agency determination that Dabney was disabled. *Id.* Second, he argues that the ALJ inadequately articulated how he evaluated the persuasiveness of medical opinions in the record. *Id.* Moving to step four, Dabney alleges that because the ALJ discounted all medical opinions in step three, the decision was not

4

properly supported. *Id.* at 11. Finally, Dabney argues that the ALJ did not fulfill his duty to develop the record because he did not seek medical records from Christian Northeast. *Id.* at 12. Based on each of these alleged errors, Dabney requests that this Court reverse the ALJ's decision and remand the case for an award of benefits. *Id.* at 15.

## I. <u>The ALJ was not collaterally estopped from re-adjudicating the state agency's determination.</u>

Dabney argues that the ALJ was required to accept the state agency's factual findings unless the ALJ explained why the finding was incorrect. Doc. 12 at 6 (citing 20 C.F.R. § 404.950(f), 416.1450(f)). But even accepting Dabney's articulation of the standard, this argument fails because the ALJ explained why he disagreed with the state agency's finding. *See* Doc. 9-1 at 55–57.

## II. <u>The ALJ adequately articulated how he evaluated the persuasiveness of medical opinion.</u>

Dabney argues that the ALJ's evaluation of the opinions of Psychologist Burner, Dr. Akeson, and Dr. Cottone's opinions was defective. Doc. 12 at 9–10. Specifically, Dabney argues that the ALJ's evaluation of the supportability of Psychologist Burner's opinion ignored Burner's clinical impressions and the fact that Burner's functional assessment was consistent with the record as a whole. *Id.* Dabney then argues that the ALJ's evaluation of Drs. Akeson and Cottone (the State Agency Psychologists) was defective because Drs. Akeson and Cottone properly relied on Burner, and the ALJ improperly discounted Burner's opinion. *Id.* Dabney further claims that the ALJ's finding that the 2024 function report contradicted the State Agency Psychologists' conclusion was improper because the State Agency Psychologists' analysis had already accounted for the report. *Id.* at 11.

### A. Legal Standard

In evaluating a medical opinion or prior administrative medical finding, ALJs are not required to give the opinion any specific weight—they are merely required to consider the opinion, determine its persuasiveness according to certain enumerated factors (the most important of which are supportability and consistency), and

articulate how they considered the opinion. 20 C.F.R. § 404.1520c(a). The articulation component requires only that the ALJ explain how he considered the supportability and consistency of the opinion. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(b). Courts uphold an ALJ's decision if substantial evidence supports his findings. *Strongson v. Barnhart*, 361 F.3d 1066, 1069 (8th Cir. 2004). "Substantial evidence" is a term of art meaning only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

**B.      Application of Law to Fact**

The ALJ properly evaluated Burner's opinion. Contrary to Dabney's claims, the evaluation of Burner's opinion did not ignore her clinical impressions. Doc. 12 at 7. Burner's clinical impressions appear to rely on statements from Dabney. Doc. 9-1 at 892. The ALJ concluded that he did not find Burner's opinion persuasive because she relied on statements from Dabney that the ALJ believes are false. *Id.* at 56. The ALJ disagreed with Burner's analysis because the ALJ found, *inter alia,* that the record "indicates the claimant has not put much effort into mental health care, despite having access to treatment" and that "[t]he claimant's reported ability to perform activities of daily living also suggests greater functioning." *Id.*; *see also* Doc. 9-1 at 892 (activities of daily living reported to Burner). The ALJ also found that Burner's opinion was inconsistent with what she personally observed when she examined Dabney. Doc. 9-1 at 56; *see also* Doc. 9-1 at 891 (Burner's observations describing Dabney's test results as being within normal ranges). The ALJ's conclusion regarding consistency was supported by the record.

Dabney argues that the ALJ should have determined that Burner's opinion was consistent because it was consistent with the reports from Drs. Roberts and Tabrah, which also found that Dabney suffered from severe mental health problems. Doc. 12 at 8. But this is not the part of Burner's opinion that the ALJ found to be inconsistent with the record. The ALJ also expressly considered these medical reports and agreed that Dabney suffered from severe mental health problems. *Id.* at

6

56. The part of Burner's opinion that the ALJ found inconsistent with the record was the degree to which these issues impacted Dabney's ability to function in the workplace.  *Id.*   The ALJ's conclusion regarding consistency was supported by substantial evidence.

Next, Dabney claims that the ALJ erred by disagreeing with the State Agency Psychologists' reports (*i.e.*, the reports of Drs. Akeson and Cottone).  Doc. 12 at 10. Not so.  The State Agency Psychologists' reports relied on the Burner report to come to their conclusions.  Doc. 9-1 at 142–143 (Dr. Akeson's report); Doc. 9-1 at 161–62 (Dr. Cottone's report).  Because the Court has already determined that the ALJ was within his rights to disagree with Burner's report, and because the State Agency Psychologists' reports relied heavily on the Burner report, the ALJ was well within his rights to discount the conclusions in the State Agency Psychologists' reports.

## III.   <u>There is no requirement that an RFC be based on functional medical evidence.</u>

Dabney argues that the decision in step five—that that the claimant had the residual functional capacity to perform medium work—was erroneous because the ALJ improperly created his own functional limitations that were not found in a medical opinion. Doc. 12 at 11.  This argument has been directly foreclosed by Eighth Circuit precedent.  *Bonham v. Bisignano*, 177 F.4th 934, 940–42 (8th Cir. 2026). There is no requirement that an RFC may be based only on the conclusions of medical professionals.  *Id.* at 945 ("An ALJ need not 'obtain from medical professionals a functional description that wholly connects the dots.'").  To the contrary, an ALJ may base his RFC conclusions on things in the medical records other than the medical conclusions, *id.* at 942, as the ALJ did here.  Doc. 9-1 at 50–57 (considering a wide range of evidence including, but not limited to, medical conclusions, medical records, and Dabney's reported activities).

## IV.   <u>Dabney waived any argument that the ALJ needed to obtain records from Christian Northeast.</u>

Finally, Dabney argues that the ALJ did not adequately develop the record between the 2006 application date and the 2012 last insured date because the ALJ failed to obtain records from the organization where Dabney received physical therapy (Christian Northeast) relating to that timeframe. Doc. 12 at 13–14. He argues this is especially egregious because the ALJ considered medical records from this time but not Dabney's pain report and functionality reports, which could have been corroborated by Christian Northeast's records. *Id.* Dabney is estopped from raising this argument.

This argument is estopped under the doctrine of judicial estoppel. "Three factors, while not 'an exhaustive formula for determining the applicability of judicial estoppel,' aid a court in determining whether to apply the doctrine." *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1047 (8th Cir. 2006) (citing *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)):

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* Here, Dabney is estopped from raising this argument because he successfully requested that the ALJ decide without the records. *See* Doc. 9-1 at 434. During the September 2024 hearing, the ALJ noted that he lacked the treatment records from Christian Northeast and suggested to Dabney that he could attempt to obtain the records. *Id.* Doc. 9-1 at 78. At the end of the hearing, the ALJ delayed entering his judgment to give Dabney a further opportunity to obtain the records from Christian Northeast. *Id.* at 98. Dabney's attorney later sent a letter to the ALJ stating that he had no further records to submit and requesting "that the post hearing development stage of this claim be closed and a decision made at your earliest convenience." *Id.* at

8

434.  In other words, Dabney's attorney specifically asked the ALJ to decide without the Christian Northeast Records.  The ALJ honored Dabney's request.  *See* Doc. 12 at 13–14 (the ALJ made his decision without obtaining the Christian Northeast Records).  Dabney cannot now claim that it was improper for the ALJ to have done so.

CONCLUSION

Based on the complete record in this case, the Court finds the ALJ's decision finding Dabney not disabled is supported by substantial evidence in the record.


Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.


**SO ORDERED,**


This 4th day of August, 2026.

_Maria A. Lanahan_
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE